IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA       *

    v.                      *     Criminal Action No. RDB-11-547

PERRY ROARK,           *

   *Defendant.*          *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## **MEMORANDUM ORDER**

On June 28, 2012, Petitioner Perry Roark ("Mr. Roark" or "Petitioner") pleaded guilty to one count of racketeering conspiracy, in violation of 18 U.S.C. § 1962(d). (ECF No. 363 *SEALED*.) This involved his leadership role in a criminal organization that perpetrated murders and criminal assaults. Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the Government and Petitioner agreed upon a sentence of life imprisonment.[1] In accordance with the plea agreement, on January 7, 2013, this Court sentenced Mr. Roark to life imprisonment plus five years of supervised release. (ECF Nos. 552, 553.) Mr. Roark is now fifty-seven years old and is currently incarcerated at United States Penitentiary Canaan in Waymart, Pennsylvania. *Find an Inmate*, Fed. Bureau Prisons, https://www.bop.gov/inmateloc (search by register number: 53975-037) (last accessed July 18, 2026). He has been in federal custody since November 7, 2011, and has served roughly thirteen-and-a-half years of his life sentence.[2]

---

[1] In a Rule 11(c)(1)(C) plea agreement, the defendant agrees to plead guilty or no contest to a charged lesser offense, and the Government's attorney agrees to a specific sentence or sentencing range. Fed. R. Crim. P. 11(c)(1)(C). Once the Court accepts the plea agreement, the Government's recommendation is binding. *Id.*

[2] Mr. Roark appears to have been continuously incarcerated since 1991. From 1991 to 2011, he was imprisoned within the Maryland state system for armed robbery. After he was due to be released from that

Presently pending before the Court is Petitioner Perry Roark's ("Mr. Roark" or "Petitioner") Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A), filed on March 17, 2026. (ECF No. 1074.) Mr. Roark seeks a reduction in his sentence from life imprisonment to time served. (*Id.*) The Government has not filed any Response. The Court has reviewed Mr. Roark's Motion; no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons below, Mr. Roark's Motion for Compassionate Release (ECF No. 1074) is DENIED.

## BACKGROUND

On March 29, 2012, a federal grand jury sitting in Baltimore returned a twenty-seven count Superseding Indictment charging Mr. Roark and twenty-two co-Defendants in a racketeering prosecution. (ECF No. 283.) He pleaded guilty to that count pursuant to Federal Rule of Civil Procedure 11(c)(1)(C) on June 28, 2012. (ECF No. 363 *SEALED*.) In his plea agreement, Mr. Roark made certain factual and sentencing stipulations. (ECF No. 366.) The following factual history is derived from those stipulations, including those made by reference to the Superseding Indictment (ECF No. 283). Where necessary, the Court also draws certain background facts from the Presentence Report (ECF No. 555 *SEALED*.)

In 1991, Mr. Roark was convicted in the Circuit Court for Baltimore County of one count each of robbery with a deadly weapon, battery, and carrying a handgun. (ECF No. 55 at 9 *SEALED*.) He was imprisoned for those crimes until February 22, 2011, and then held in

---

Maryland prison sentence, the United States Attorney for the District of Maryland pursued the indictment in this case as part of a much larger racketeering conspiracy prosecution. Mr. Roark was then arrested and held in federal custody while this case remained pending. He has been in federal custody since November 7, 2011.

federal custody related to the charges in the instant case beginning on November 7, 2011. (*Id.* *SEALED*.)

In or about 2000, while incarcerated in a Maryland prison, Mr. Roark founded and was the "Supreme Commander" of Dead Man Incorporated, also known as "DMI," a violent criminal organization. (ECF No. 283 at 2–3.) In that role, he ordered a "large number of assaults and was frequently involved in narcotics trafficking within the prisons where he was housed from 2000 to [2011]." (ECF No. 366 at 4.) He ordered the murder of Tony Geiger, which his co-defendants carried out. (*Id.*) He also ordered the murders and took steps to secure the murders of Tony Crew, Michael Quinn, and Shawn Novak, although those murders were never ultimately carried out. (*Id.*)

The Government initially indicted Mr. Roark and twenty-two other members of Dead Man Incorporated on October 6, 2011. (ECF No. 1.) On March 29, 2012, a grand jury returned a twenty-seven count Superseding Indictment. (ECF No. 283.) Mr. Roark pleaded guilty to Count One of the Superseding Indictment, which charged him with racketeering conspiracy, in violation of 18 U.S.C. § 1962(d). (ECF No. 363 *SEALED*.) Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), he agreed with the Government that the sentence to be imposed was life imprisonment. (ECF No. 366.)

On January 7, 2013, this Court sentenced Mr. Roark to life imprisonment. (ECF No. 552.) He did not file an appeal. On March 17, 2026, Petitioner filed the pending Motion for Compassionate Release. (ECF No. 1074.)

## ANALYSIS

Mr. Roark, moving pro se, seeks a reduction in his life sentence to time served pursuant to 18 U.S.C. § 3582(c)(1)(A). The Court "liberally construe[s]" pro se filings and holds them "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted).

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Rutherford v. United States*, 146 S. Ct. 1320, 1326 (2026) (citing 18 U.S.C. § 3582(b)). "This 'rule of finality,' however, is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One exception is 18 U.S.C. § 3582(c)(1)(A), which is commonly called "compassionate release." *See Rutherford*, 146 S. Ct. at 1326. Section 3582(c)(1)(A)(i), relevant here, permits a court to reduce a prison sentence upon finding that (1) a petitioner has exhausted his administrative remedies; (2) there are extraordinary and compelling reasons warranting a reduction; and (3) such a reduction would align with any relevant sentencing factors set out in 18 U.S.C. § 3553(a) and any applicable policy statement issued by the United States Sentencing Commission.[3] *See United States v. Ferguson*, 55 F.4th 262, 267–68 (4th Cir. 2022) (quoting § 3582(c)(1)(A)).

In this case, Mr. Roark has not demonstrated any extraordinary and compelling reasons for relief. Even if he had, a reduction in his sentence would not be consistent with the

---

[3] Section 3582(c)(1)(A) also permits a court to grant relief if a prisoner (1) met the threshold requirements; (2) is at least seventy years of age; (3) has served at least thirty years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c); and (4) the Director of the Bureau of Prisons has determined that the prisoner is not a danger to the safety of the any other person or the community. *Id.* § 3582(c)(1)(A)(ii). This provision does not apply in Mr. Roark's case for the simple reason that he is fifty-seven years old.

sentencing factors set out in 18 U.S.C. § 3553(a). His Motion for Compassionate Release (ECF No. 1074) is therefore DENIED.

### I.    Administrative Exhaustion

The First Step Act of 2018, as codified at 18 U.S.C. § 3582(c)(1)(A), permits a prisoner to seek compassionate release in the federal courts on his own behalf. *See Rutherford*, 146 S. Ct. 1328 (citing 18 U.S.C. § 3582(c)(1)(A)); *accord United States v. Muhammad*, 16 F.4th 126, 130 (4th Cir. 2021). Before he can access the federal courts, he must first request that the warden of his facility seek compassionate release on his behalf. *Muhammad*, 16 F.4th at 130 (citing § 3582(c)(1)(A)). He must then *either* wait thirty days from making that request before filing in federal court *or* fully exhaust his administrative rights of appeal within the Bureau of Prisons. *Id.* (quoting § 3582(c)(1)(A)). Either method is sufficient. *Rutherford*, 146 S. Ct. at 1328; *Muhammad*, 16 F.4th at 130 (citing *United States v. Garrett*, 15 F.4th 335, 338 (5th Cir. 2021)) (noting that Congress provided "two alternative ways to satisfy the threshold requirement"). This is a non-jurisdictional threshold requirement, however, and is forfeited if not timely raised by the Government. *Muhammad*, 16 F.4th 126, 129–30 (4th Cir. 2021) (collecting cases). A district court errs by dismissing of its own accord a pro se compassionate release motion because of a petitioner's failure to comply with the threshold requirements. *Id.* at 130 (reversing a district court's denial of a compassionate release motion for failure to comply with § 3582(c)(1)(A)'s threshold requirements).

In this case, Mr. Roark has not demonstrated that he submitted any request for compassionate release to the warden. However, as the Government has not filed any opposition, the Court cannot dismiss his Motion for failure to demonstrate administrative

exhaustion. *See Muhammad*, 16 F.4th at 129–30. Accordingly, the Court proceeds to the merits of Mr. Roark's claim for relief.

## II.   Extraordinary and Compelling Reasons

To reduce a federal prison sentence under § 3582(c)(1)(A), a federal court must find the existence of "extraordinary and compelling reasons" warranting such relief. *See, e.g.*, *Rutherford*, 146 S. Ct. at 1326–27 (citations omitted). The United States Sentencing Commission is charged with defining "what should be considered extraordinary and compelling reasons for sentence reduction" under 18 U.S.C. § 3582(c)(1)(A). 28 U.S.C. § 994(t). The Commission has identified six possible circumstances that viewed separately or together may establish "extraordinary and compelling reasons" for a sentence reduction. These reasons include:

> (1) a serious medical circumstance of the defendant;
> (2) a defendant who is 65 years old that suffers from serious health deterioration and has served either 10 years or 75 percent of his or her term;
> (3) the death or incapacitation of an immediate family member;
> (4) the defendant being a victim of abuse while in custody;
> (5) other reasons of similar gravity as (1)–(4); and
> (6) unusually long sentence if the defendant has served at least ten years.

U.S.S.G. § 1B1.13(b)(1)–(6).

Mr. Roark raises three potential extraordinary and compelling reasons for relief: (1) his rehabilitation; (2) the need to care for his parents; and (3) changes in sentencing law. (ECF No. 1074 at 2–4.) The first purported reason, his rehabilitation, does not suffice. Congress has made explicit that rehabilitation alone is not an extraordinary and compelling reason for relief. 28 U.S.C. § 994(t).

Second, Mr. Roark points to the fact that his parents are aging and they will require care and support "in the near future." (*Id.* at 3.) He also notes that there is a family history of

Alzheimer's disease on both sides of his family. (*Id.*) The incapacitation of a parent may constitute an extraordinary and compelling reason for compassionate release, but only when the petitioner would be the sole available caregiver to that parent. U.S.S.G. § 1B1.13(b)(3)(C). In Mr. Roark's case, that condition is not satisfied for two reasons. First, he does not demonstrate that either of his parents is currently suffering from any mental or physical condition which renders them incapacitated. Indeed, Mr. Roark's Motion for Compassionate Release does not even suggest that his parents are in poor health. He only mentions that they are aging and will need care eventually. (*Id.*) This is insufficient to satisfy the requirement of incapacitation required by § 1B1.13(b)(3)(C). The second reason Mr. Roark's parents' age does not satisfy § 1B1.13(b)(3)(C) is that his mother and her husband are able to care for one another. The Sentencing Guidelines provision requires that the petitioner be the *sole available* caregiver. *Id.* As alleged in his Motion for Compassionate Release, Mr. Roark would not be the sole available caregiver. Accordingly, his family circumstances do not constitute an extraordinary and compelling reason for relief.

Third, and finally, Mr. Roark suggests that he is eligible for compassionate release because there have been changes in the sentencing law surrounding racketeering laws. (ECF No. 1074 at 2.) Specifically, he argues that the maximum penalty under 18 U.S.C. § 1962(d), the crime to which he pleaded guilty, is now twenty years. (*Id.*) He argues that his sentence of life imprisonment is now disparate based on that change and, therefore, makes him eligible for a reduction in sentence. (*Id.*) Mr. Roark's argument is incorrect and relies on a misunderstanding of the penalty scheme imposed by the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968.

By its name, RICO concerns "racketeering activity." *See* 18 U.S.C. § 1962(a). For the purposes of this case, RICO defines "racketeering activity" to mean "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical . . . which is chargeable under State law and punishable by imprisonment for more than one year."[4] *Id.* § 1961(1)(A). Section 1962 of RICO lists those activities made illegal under the statute. *See id.* § 1962. The provision criminalizes a broad range of activities involving or related to racketeering activities and collecting unlawful debts, including: using or investing money derived from racketeering activity or collecting unlawful debt and acquiring businesses through racketeering activity. 18 U.S.C. § 1962(a)–(b). It is also illegal to be part of a conspiracy to do any of the activities prohibited in § 1962(a)–(c). *Id.* § 1962(d).

Pursuant to § 1963, the maximum penalty for a direct violation of any part of § 1962 is twenty years. *Id.* § 1963(a). For example, purchasing a car with income derived from a racketeering activity like bribery would be a violation of § 1962(a), and the maximum penalty for purchasing the car would be twenty years' imprisonment. However, as important for this case, § 1963 also states that a maximum sentence of life imprisonment may be imposed when the relevant violation of § 1962 is "based on a racketeering activity for which the maximum penalty includes life imprisonment." *Id.* § 1963(a). As noted above, RICO defines "racketeering activity" to include murder as chargeable by the State. *Id.* § 1961(1)(A). Under

---

[4] The statute also states that "racketeering activity" includes "any act which is indictable" under a host of sections of Title 18 of the United States Code, including § 201 (relating to bribery), § 224 (relating to sports bribery, §§ 471, 472, 473 (relating to counterfeiting), and many others, as well as acts indictable under certain provisions of Title 29, Title 11, and other selected other federal laws. 18 U.S.C. § 1961(1)(B)–(G).

Maryland law, the maximum penalty for murder is life imprisonment. *See* Md. Code Ann., Crim. Law § 2.201(b). Accordingly, 18 U.S.C. § 1963(a) permits a maximum federal sentence of life imprisonment when the violation of § 1962(d) is based on the racketeering activity of murder at Maryland law.

In this case, Mr. Roark pleaded guilty to one count of racketeering conspiracy, in violation of 18 U.S.C. § 1962(d). (ECF No. 363 *SEALED*.) However, he also stipulated in the plea agreement that, while incarcerated in a Maryland prison, he had ordered the murder of Tony Geiger. (ECF No. 366at 4.) Therefore, Mr. Roark's violation of § 1962(d) of RICO was predicated, at least in part, on a murder which carried the maximum penalty of life imprisonment. Mr. Roark alleges that the maximum penalty to which he could be sentenced now is twenty years. For these reasons, that is incorrect. Were he sentenced today, Mr. Roark would still be eligible for life imprisonment due to the murder of Tony Geiger. Given that Mr. Roark's sentence would still be the sentence he might receive today, there is no extraordinary and compelling reason for relief in this case.

In sum, Mr. Roark's rehabilitation, his concern for his parents, and the sentence of life imprisonment he received in this Court are not extraordinary and compelling reasons for compassionate release under 18 U.S.C. § 3582(c)(1)(A). His Motion (ECF No. 1074) is DENIED.

### III.    § 3553(a) Factors

Even if Petitioner had demonstrated an extraordinary and compelling reason for compassionate release or sentence reduction, such relief would nevertheless be inappropriate because it would be inconsistent with the sentencing factors set out in 18 U.S.C. § 3553(a). If

a district court finds the existence of extraordinary and compelling reasons to grant relief, it must also independently determine that the relevant sentencing factors set out at 18 U.S.C. § 3553(a) support relief. *See* 18 U.S.C. § 3582(c)(1)(A); *see also Rutherford*, 146 S. Ct. at 1327 (citing § 3582(c)(1)(A)). Those factors are: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed"; (3) "the kinds of sentences available"; (4) the sentencing guideline ranges; (5) "any pertinent policy statement"; (6) "the need to avoid unwarranted sentence disparities among defendants with similar records"; and (7) "the need to provide restitution to the victims of the offense." 18 U.S.C. § 3553(a).

In this case, Mr. Roark's rehabilitation is a mitigating factor. *See, e.g.*, *United States v. Martin*, RDB-04-0029, 2021 WL 3172278, at *3 (D. Md. July 27, 2021). Mr. Roark's commitment to rehabilitation is both commendable and encourages the Court. However, he has served less than fifteen years of a life sentence. At this time, therefore, his rehabilitation does not merit compassionate release.

However, the remaining sentencing factors strongly disfavor relief. Put simply, Mr. Roark executed an armed robbery for which he was prosecuted by the State of Maryland and imprisoned. In or around 2000, while serving that sentence, he founded Dead Man Incorporated, a violent gang that exists both inside and outside of prison. He ordered the murder of Tony Geiger, which was carried out. (ECF No. 366 at 4.) He also ordered and took steps to secure murders of Tony Crew, Michael Quinn, and Shawn Novak. (*Id.*) Those murders were not ultimately carried out (*id.*), but speak nonetheless to Mr. Roark's personal history and characteristics. Finally, he ordered a "large number of assaults and was frequently involved in

narcotics trafficking within the prisons where he was housed from 2000 to [2011]." (*Id.*) His personal history and characteristics, as well as the nature of the offense, seriously weigh against relief. Finally, the sentence imposed—which was agreed upon by Mr. Roark as part of his plea deal—reflects the seriousness of the crimes committed, promotes respect for the law, and afford adequate deterrence. In short, the sentencing factors of § 3553(a) do not support compassionate release.

## CONCLUSION

For the reasons stated above, it is this 23rd day of July 2026 hereby ORDERED that Petitioner Perry Roark's Motion for Compassionate Release (ECF No. 1074) is DENIED.

/s/
_____
Richard D. Bennett
United States Senior District Judge